SETH E. PIERCE (SBN 186576), sep@msk.com
ALFREDO ORTEGA (SBN 261961), axo@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE HITACHI TELEVISION OPTICAL BLOCK CASES

This Document Relates To: All Actions

Master File No. 08cv1746 DMS (NLS)

The Honorable Dana M. Sabraw
Magistrate Judge Nita Stormes

**DEFENDANTS' RESPONSE TO COURT'S REQUEST FOR SUPPLEMENTAL BRIEFING REGARDING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**


**Page(s)**

I. ACTUAL, MATERIAL CONFLICTS EXIST ........ 1

II. PLAINTIFFS HAVE NOT DEMONSTRATED SIGNIFICANT CONTACTS ........ 1

A. plaintiffs' forum selection not entitled to deference ........ 1

B. Significant contacts do not exist ........ 2

1. Insufficient Nexus ........ 2

2. Defendant by Defendant Analysis Required ........ 4

a. Defendant HL ........ 4

b. Defendants HHEA and HAL ........ 4

(i) *State of Incorporation/Business Operations* ........ 4

(ii) *De Minimis Related California Operations* ........ 5

3. The Existence of California Purchasers Is Irrelevant to the Analysis ........ 6

4. Other Considerations ........ 8

a. Expectation of the Parties ........ 8

b. Absurd Results ........ 9

5. Plaintiffs' Cases Are Distinguishable ........ 9

III. PLAINTIFFS HAVE NOT DEMONSTRATED SUBCLASSING IS VIABLE ........ 10

IV. STATE-BY-STATE SALES ........ 10

V. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arabian v. Sony Elecs. Inc.*,
2007 WL 627977 (S.D. Cal. 2007) (Hayes, J.) .......... 9

*Byers v. Lincoln*,
607 F.Supp.2d 840 (N.D. Ohio 2009) .......... 4

*City of San Jose v. Superior Court*,
12 Cal. 3d 447 (1974) .......... 9

*Clothesrigger, Inc. v. GTE Corp.*,
191 Cal. App. 3d 605 (4th Dist. 1987) .......... 2, 9

*Dukes v. Wal-Mart Stores, Inc.*,
603 F.3d 571 (9th Cir. 2010) .......... 4

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
177 F.R.D. 360 (E.D. La. 1997) .......... 1, 6

*In re Graphics Processing Units Antitrust Litig.n*,
527 F.Supp.2d 1011, 1028 (N.D. Cal. 2007) .......... 5, 8

*In re St. Jude Med., Inc.*,
425 F.3d 1116 (8th Cir. 2005) .......... 8

*Keilholtz v. Lennox Hearth Prod. Inc.*,
268 F.R.D. 330 (N.D. Cal. 2010) .......... 7

*Laney v. Am. Standard Cos., Inc.*,
2010 WL 3810637 (D.N.J. 2010) .......... 1, 8

*Lombard v. Econ. Dev. Admin. of Puerto Rico*,
1995 WL 447651 (S.D.N.Y. 1995) .......... 4

*Montgomery v. New Piper Aircraft*,
209 F.R.D. 221 (S.D. Fla. 2001) .......... 6

*Nordberg v. Trilegiant Corp.*,
445 F. Supp. 2d 1082 (N.D. Cal. 2006) .......... 9

*Norwest Mortgage, Inc. v. Super. Ct.*,
72 Cal. App. 4th 214 (4th Dist. 1999) .......... 5, 6, 7

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .......... passim

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Tidwell v. Thor Industries, Inc.*,
2007 U.S. Dist. LEXIS 21819 (S.D. Cal. 2007) (Lorenz, J.)............................................ 7

*Util. Consumers Action Network v. Sprint Solutions, Inc.*,
259 F.R.D. 484 (S.D. Cal. 2009) ..................................................................... 1, 10

*Wershba v. Apple Computer, Inc.*,
91 Cal. App 4th 224 (6th Dist. 2001)........................................................................ 9

**STATUTES**

Cal. Civ. Code § 1792.............................................................................................. 9

The "Due Process Clause and the Full Faith and Credit Clause" require "that for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (internal quotation marks omitted).

## I. ACTUAL, MATERIAL CONFLICTS EXIST

The first step in the *Shutts* analysis is the determination of whether California "law conflicts in any material way with any other law which could apply." *Shutts*, 472 U.S. at 816. If there are no material conflicts, due process and full faith are satisfied even absent significant contacts to the forum. *Id.* Defendants have catalogued, in the attached Appendix A, numerous differences – including, among many others, what relief is available, whether privity with Defendants is required, and whether reliance is required. Plaintiffs argued initially, and in their Reply, that there are no material State law conflicts. But Defendants' Appendix, as well as numerous case decisions, prove otherwise. *See* Defendants' Opposition ("Opp.") at 21:16-22:5, ECF No. 109 (citing/quoting cases); *Shutts,* 472 U.S. at 818 (finding sufficient conflict on differences in how affected jurisdictions would calculate damages alone).[1]

## II. PLAINTIFFS HAVE NOT DEMONSTRATED SIGNIFICANT CONTACTS

### A. PLAINTIFFS' FORUM SELECTION NOT ENTITLED TO DEFERENCE

Plaintiffs argue that *Shutts* is academic and choice of law analysis unnecessary because the

[1] Plaintiffs' other rebuttal – that California's legal protections are the strongest in the country, making any conflict academic – was expressly rejected in *Shutts*, where the Court concluded that a material difference **favoring either party** constituted a material conflict. *Shutts,* 472 U.S. at 816-17 (rejecting application of Kansas law where higher Kanses interest rates could amount to "millions of dollars" in additional liability for the defendant); *see also Util. Consumers Action Network v. Sprint Solutions, Inc.*, 259 F.R.D. 484, 487 (S.D. Cal. 2009) (If "California's consumer protection laws are among the strongest in the country…it seems unfair to apply those laws across the country in jurisdictions less concerned with consumer protection."); *Laney v. Am. Standard Cos., Inc.*, 2010 WL 3810637, *22 (D.N.J. 2010) ("It is not enough to argue that because New Jersey has the strongest consumer fraud protections, it has a more compelling interest in determining the outcome of the case….[E]ach plaintiffs' home state has an interest…"); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 371 (E.D. La. 1997) (**"It is simply incorrect to assume that the overriding interest in all consumer-oriented cases is protection of the consumer."**) (emphasis added).

representative Plaintiffs' selection of California law is dispositive. Reply at 9 (*citing Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010)). But Plaintiffs' argument and the cited decision are completely at odds with the U.S. Supreme Court's decision in *Shutts*:

> **[P]laintiff's desire for forum law is rarely, if ever controlling.** In most cases the plaintiff shows his obvious wish for forum law by filing there. "If a plaintiff could choose the substantive rules to be applied to an action … the invitation to forum shopping would be irresistible."

*Shutts,* 472 U.S. at 820 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 337 (1981))(emphasis added); *see also Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 615 (4th Dist. 1987) (If the court did not "engage in any choice of law analysis, then the court failed to exercise its discretion properly….").

**B. SIGNIFICANT CONTACTS DO NOT EXIST**

The evidence amply demonstrates that significant contacts do not exist here.

**1. Insufficient Nexus**

The following chart details the record presented to date on this issue:

| Potential Contact | Plaintiffs' Allegations or Evidence | Defendants' Evidence |
|---|---|---|
| HHEA Corporate Location | Plaintiffs state that Defendant Hitachi Home Electronics (America), Inc. **("HHEA")** is a California corporation with its principal place of business located in California. Plaintiffs' Motion for Class Certification ("Motion") at 15 (citing Complaint at ¶ 7). | Defendants agree. |
| HAL Corporate Location | Plaintiffs allege that Defendant Hitachi America, Ltd. **("HAL")** maintains its principal offices in California. Motion at 15 (citing Complaint at ¶ 8).<br>Plaintiffs repeat this allegation in their Reply, at 10, ECF No. 128, wholly ignoring Defendants' evidence to the contrary. | Defendants' evidence demonstrates that HAL is a New York corporation with its principal offices in Tarrytown, New York. *See* Answer at ¶ 8 (denying allegation), [Doc 14.]; *see also* Ex. 11 to Pierce Decl. In Support of Opp. ("Pierce Decl."), ECF No. 109-2. |
| HL Corporate Location | Plaintiffs do not reference Defendant Hitachi, Ltd. **("HL")** in their significant contacts analysis. | Defendants' evidence demonstrates that Hitachi, Ltd. is a Japanese corporation. *See* Answer at ¶ 9, ECF No. 14. It does not maintain offices or conduct operations in California. |

| | | |
|---|---|---|
| Design Location | Plaintiffs allege that the televisions were developed and designed in California. Motion at 15 (citing Complaint at ¶¶ 2, 7, 8, 38, and 57).<br><br>Plaintiffs repeat this allegation in their Reply, at 10, ECF No. 128, wholly ignoring Defendants' evidence to the contrary. | Defendants' evidence demonstrates that the "LCD RPTVs, and particularly the optical engines, were primarily developed/designed in Japan." Decl. of N. Ogura In Support of Opp., ¶ 7, ECF No. 109-5. |
| Manuf'g | Plaintiffs state that the LCD RPTVs were assembled in a Mexican factory "operated by Hitachi employees based in its Chula Vista, California headquarters." Motion at 15 (inaccurately citing K. Kato transcript).<br><br>Plaintiffs repeat this allegation in their Reply, wholly ignoring Defendants' evidence to the contrary. *See* Reply at 10, ECF No. 128 (citing opening brief). | Defendants' evidence demonstrates that the personnel who supervised operations at the factory primarily worked in Tijuana; they merely lived and occasionally attended meetings in California. Decl. of K. Kato, ¶ 6, Ex. 4 to Pierce Decl., ECF No. 109-2; Testimony of K Kato at 13:22-15:22, Ex. 10 to Pierce Decl., ECF No. 109-2. |
| Marketing | Plaintiffs allege that all product "marketing" emanated from California. Motion at 15 (citing Complaint at ¶¶ 2, 7, 8, 38, and 57). | Defendants' evidence demonstrates that HAL did "not directly, actively market" the "LCD RPTVs for sale to potential individual purchasers. HAL's primary strategy, [rather], was to encourage the retail dealers ... to advertise and promote the product[]" themselves. Decl. of W. Whalen In Support of Opp., ¶ 4, ECF No. 109-12. |
| Customer Service Response | Plaintiffs allege that all persons "who had questions regarding their warranty, service, or operation or technical assistance were "directed" to personnel in Defendants' "California location." Motion at 15 (citing unrelated portions of K. Kato Tr.). | Defendants' evidence demonstrates that all customer service inquiries were directed to, and virtually all responses provided by, third-party call center operators located in Illinois. Decl. of T. Omar In Support of Opp.("Omar Decl."), ¶¶ 3-5, ECF No. 109-13 (noting that less than 1% are escalated to personnel in California). |
| Warranty Decisions | Plaintiffs state that "[a]ll decisions pertaining to the Television warranties were made from California...." Motion at 15 (inaccurately citing W. Warren transcipt).<br><br>Plaintiffs repeat and label this assertion "uncontradicted" in their Reply, blatantly ignoring Defendants' evidence. *See* Reply at 10, ECF No. 128. | Defendants' evidence demonstrates that, with rare exception, warranty decisions were/are made, nationwide, at the independent, authorized servicer level or by the referenced call center operators in Illinois. Omar Decl., ¶¶ 6-9, ECF No. 109-13 (noting that less than 1% are escalated to personnel in California). |

**2. Defendant by Defendant Analysis Required**

Choice of law analysis, moreover, must be performed at the party/claim level. *See, e.g.*, *Byers v. Lincoln*, 607 F.Supp.2d 840, 845-46 and n.15 (N.D. Ohio 2009) (collecting cases; "Thus, in the present case, even if choice-of-law principles suggest that the law of (say) Ohio should apply to Byers' claims against a majority of defendants, this Court cannot apply Ohio law to a particular defendant if there is no significant relationship at all between that defendant and Ohio."); *see also, e.g., Lombard v. Econ. Dev. Admin. of Puerto Rico*, 1995 WL 447651 at *4 (S.D.N.Y. 1995) ("[u]nder both California and New York conflicts rules, a different determination properly is made for each defendant").

a. Defendant HL

Defendants do not believe Plaintiffs have made the requisite showing for any of the Defendants. But it is beyond dispute that Plaintiffs have failed to establish the requisite connection between California and Defendant HL. Plaintiffs have not identified any contact, let alone a significant one, between Defendant HL and California. The absence of any contacts **precludes** the nationwide application of California law to the claims against Defendant HL even if permitted against the other Defendants.

b. Defendants HHEA and HAL

The evidence[2] against Defendants HHEA and HAL, at bottom, only offers two **real** California contacts, neither of which is sufficient.

(i) *State of Incorporation/Business Operations*

First, Defendant HHEA is a California corporation with its principal place of business in San Diego, and Defendant HAL, although a New York corporation with its principal place of

---

[2] Plaintiffs repeatedly suggest that the Court must accept their allegations regarding contacts, and other matters, as true in conducting the certification analysis. *See, e.g.,* Reply at 7:9, ECF No. 128. But Plaintiffs' argument was recently, emphatically rejected by the Ninth Circuit:

> Falcon's central command requires district courts to ensure that Rule 23 requirements are actually met, not simply presumed from the pleadings.

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 581-82 (9th Cir. 2010).

business in New York, has conducted some business in California.  But it has been established since *Shutts* that State incorporation and business operations **are not significant enough.**

In *Shutts*, the Court specifically recognized that the "Petitioner owns property and conducts substantial business in the State, so Kansas certainly has an interest in regulating petitioner's conduct in Kansas."  *Shutts,* 472 U.S. at 819.  The *Shutts* Court did "not lightly discount" this connection (or the other contacts proffered by the Kansas Supreme Court), but still concluded that such contacts could not justify applying Kansas law to non-residents.  *Id.*

The *Shutts* Court's holding has been reiterated and amplified in subsequent rulings.  *See, e.g.*, *Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 226 (4th Dist. 1999) ("The fact that Norwest Mortgage is incorporated and does business in California … does not alone permit application of the forum law to the claims of nonresident plaintiffs."); *In re Graphics Processing Units Antitrust Litig.n*, 527 F.Supp.2d 1011, 1028 (N.D. Cal. 2007) (rejecting California law even though defendant "Nvidia is allegedly headquartered in California").

(ii)   *De Minimis Related California Operations*

Defendants HHEA and HAL have also, at times, conducted limited customer service functions in California related to the LCD RPTVs at issue.  LCD RPTV purchaser inquiries are generally handled by third-party personnel located in Illinois and warranty decisions are made at the independent servicer level nationwide.  But occasionally, customer service inquiries and warranty rejections are escalated to and handled by personnel based in San Diego, California.  *See, e.g.*, Omar Decl., at ¶¶5, 9, ECF No. 109-13 (less than 1%).  But limited California operations affecting only a handful of customers is not sufficient to permit the nationwide export of California law.  *Shutts* and *Norwest* are again directly on point.

In *Shutts*, a small percentage of the royalty-bearing leases at issue – also less than 1% – were situated in Kansas.  *See Shutts*, 472 U.S. at 815.  But the *Shutts* Court expressly concluded that this small connection – even if directly relevant to the case – was insufficient to permit the application of Kansas law to other lease transactions/leaseholders outside the State.  *Id.* at 822.

In *Norwest*, the defendant conducted loan servicing operations in Northern California – of the kind directly at issue in the case – for approximately 1 year (of the proposed class period) for

approximately 11% of Norwest's national loan portfolio. *Norwest,* 72 Cal. App. 4th at 218-219. But the *Norwest* Court expressly concluded that this connection was insufficient to permit the application of California law to all of Norwest's customers regardless of where their loan was serviced.[3] *Norwest,* 72 Cal. App. 4th at 227; *Montgomery v. New Piper Aircraft*, 209 F.R.D. 221, 228 (S.D. Fla. 2001) (rejecting nationwide application of Florida law even though planes partly assembled in Florida); *Bronco II*, 177 F.R.D. at 371 (rejecting nationwide application of Michigan law even though cars designed and Ford based in Michigan).

* * *

Defendant HL designed the LCD RPTVs in Japan. A nonparty (HIMEX) assembled them in Mexico. A New York company distributed them nationwide. Independent retailers marketed them. Customers purchased them from local, independent retailers throughout the country. A nonparty call center, located in Illinois, responded to technical and warranty inquiries, and a nationwide system of independent servicers decided whether the customer qualified for in warranty repair. *See* Ogura Decl., ¶ 7, ECF No. 109-5 (design location); *see generally* Warren, Omar, and Whalen Decls., ECF Nos. 109-11, 109-13, and 109-12. The vast, overwhelming majority of purchases have absolutely no connection to California. Application of California law to their claims would be "arbitrary and unfair."

### 3. The Existence of California Purchasers Is Irrelevant to the Analysis

Plaintiffs have not argued, but the Court's Order impliedly begs the question, whether the mere existence of California purchasers in the proposed class creates enough of a nexus to permit the constitutional application of California law to their out-of-State class-mates. It does not.

[3] *Norwest* did permit the application of California law to out-of-State residents whose loans were serviced in California. The Court could, perhaps, draw a similar line here – applying California law to persons who purchased the LCD RPTV in California **and** the very limited number of out-of-State LCD RPTV customers whose warranty claim was escalated to California personnel for resolution. But even that line would be arbitrary. In *Norwest*, the California operations were directly relevant to the claim – i.e., California personnel allegedly improperly purchased hazard insurance for the loans they serviced. Here, the only connection to California would be Plaintiffs' demand for a repair to which they were not entitled. It is hard to see how a unilateral demand for relief to which the customer was not entitled, without more, could confer significant contacts sufficient to apply California law to that customer's claim.

First, *Shutts* unequivocally held that the forum State "must have a 'significant contact or significant aggregation of contacts' to the claims **asserted by each member of the plaintiff class**…." *Shutts*, 472 U.S. at 821. Indeed, in *Shutts*, the Kansas leaseholders comprised 3% of the proposed class. If the existence of some in-State class members was enough to create significant contacts for out-of-State class members, the Kansas Supreme Court's application of Kansas law would have been affirmed. *See also Tidwell v. Thor Industries, Inc.*, 2007 U.S. Dist. LEXIS 21819 at *25 (S.D. Cal. 2007) (Lorenz, J.) (rejecting nationwide application of California law where "just slightly over two percent [2%] of all the trailers sold were purchased in California").

Plaintiffs may argue that *Shutts* is distinguishable because the percentage of Kansas residents was unusually low. But courts have rejected exporting California law in cases involving far higher percentages of California residents (as a percentage of the proposed class). *See, e.g.*, *Norwest,* 72 Cal. App. 4th at 218 (denying nationwide application even though over 35% (27,000/77,000) of proposed class resided in California).[4]

Second, creating a nexus for out-of-State purchasers on the basis of unrelated in-State purchases would turn constitutional choice of law analysis on its head. The fact that Plaintiff Markee is from California can have no bearing on whether California law can be constitutionally applied to the separate claim of Plaintiff Lingle, who hails from Ohio. Mr. Lingle's claim to California law must stand or fall on his claim's connection to the State. A contrary holding would deny the very Full Faith and Credit *Shutts* affirmed when it required significant contacts. Indeed,

[4] *Keilholtz*, cited in Plaintiffs' Reply, does find significant contacts, in part, on the basis of California sales, but *Keilholtz* is both incorrectly decided and distinguishable. First, *Keilholtz* ignores *Shutts'* admonition that significant contacts must exist for "**each member of the plaintiff class**…." California sales do not create contacts for out-of-State purchasers. Second, *Keilholtz* found that close to 20% of the furnaces were sold to California residents – a figure disproportionately high given California's share of the U.S. population (12%). *See Keilholtz,* 268 F.R.D at 339-40. (There is no similar evidence in the record here.) Third, and perhaps most important, 76% of the furnaces at issue were manufactured or partially manufactured in California – a far more significant contact. *Id*. at 340. Even if California sales are properly considered, and they are not, *Keilholtz's* facts are readily distinguishable. (Defendants found other opinions making passing reference to the significance of California sales, but none analyzed the issue or detailed the numbers/percentages involved.)

such a holding would render *Shutts* meaningless in nationwide class actions – the very context in which it was decided – because some class members will almost always reside in the forum State.

Third, such a holding would effectively abrogate *Shutts*' core holding that jurisdiction and constitutional choice of law principles must be separately analyzed and that jurisdiction alone is insufficient to permit the constitutional application of forum law to non-residents:

> [W]hile a State may, for the reasons we have previously stated, assume jurisdiction over the claims of plaintiffs whose principal contacts are with other States, it may not use this assumption of jurisdiction as an added weight in the scale when considering the permissible constitutional limits on choice of substantive law. It may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a "common question of law."

*Shutts,* 472 U.S. at 821. If application of forum law to out-of-State residents is solely premised on another class member's forum residency, jurisdiction and choice of law are one and the same.

**4. Other Considerations**

Defendants' position that California law cannot be applied class-wide is buttressed by two additional considerations – the expectation of the parties and the absurd result Plaintiffs elicit.

a. Expectation of the Parties

*Shutts* holds, 472 U.S. at 822 (emphasis added), that the "expectation of the parties" is an important consideration: "When considering fairness in this context, an important element is the expectation of the parties. **There is no indication that when the leases involving land and royalty owners outside of Kansas were executed, the parties had any idea that Kansas law would control."** As in *Shutts*, this consideration counsels against applying California law nationwide here. The proposed plaintiff class did not purchase the LCD RPTVs from Defendants. They purchased or leased the televisions from their local retailer (*e.g.*, Circuit City, Sears). The purchasers' expectation, if any, was that their State's courts and law would control any future dispute. *See, e.g., In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) ("no indication out-of-state parties **'**had any idea that [Minnesota] law could control**'** potential claims"); *GPU,* 527 F.Supp.2d at 1028 (transactions "for individual consumers[] are local in nature"); *Laney*, 2010 WL 3810637 at *22 (federally required warranty disclaimers – e.g., some States do not allow

limitations; rights may vary by State – some evidence of parties' expectations).[5]

b. Absurd Results

Plaintiffs' course also hazards an absurd result – the application of inapplicable law.

- The Consumer Legal Remedies Act does not apply to non-residents. *See, e.g., Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1096 (N.D. Cal. 2006) ("the only plaintiffs residing in California and therefore the only plaintiffs with standing to enforce the CLRA against defendants….").
- The Song-Beverly Warranty Act does not apply to goods purchased outside California. *See, e.g.,* Cal. Civ. Code § 1792 ("sold at retail in this State"); *Arabian v. Sony Elecs. Inc.*, 2007 WL 627977 at *3 n.6 (S.D. Cal. 2007) (Hayes, J.).

"Class actions are provided only as a means to enforce substantive law." *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 462 (1974). Permitting the representative plaintiffs to claim nationwide application of California law solely to surmount the class certification hurdle and without regard to the impact it could have on the non-California class members' claims "would be to confuse the means with the ends – to sacrifice the goal for the going." *Id.*

**5. Plaintiffs' Cases Are Distinguishable**

While some cases have applied California law nationwide, the facts in those cases revealed a material connection to California directly related to the claims in dispute. *See, e.g., Wershba v. Apple Computer, Inc.*, 91 Cal. App 4th 224, 242 (6th Dist. 2001) (settlement class context; "And the core decision at issue here, namely the change of policy…, was made at Apple's headquarters in California.").[6] But that signature connection is wholly absent here.

---

[5] Any argument that out-of-State LCD RPTV purchasers expected California law to apply would be pure legal fiction – nothing more. The conclusion might be different if Defendants had an iconic brand inextricably linked to a particular State – such as Apple and California, Ford and Michigan; Wal-Mart and Arkansas, or Microsoft and Washington. But that is not the case here.

[6] *See also, e.g., Clothesrigger, Inc,.* 191 Cal. App. 3d at 605, 613 (remanding for *Shutts* analysis, but noting that alleged facts "if true, would appear to constitute a sufficient aggregation" – to wit, "defendants do business in California, defendant [SPC's] principal offices are in California, a significant number of Sprint subscribers are California residents, and defendant [GTE SCC's] employees and agents who prepare advertising and promotional literature for the Sprint service are

(…continued)

## III. PLAINTIFFS HAVE NOT DEMONSTRATED SUBCLASSING IS VIABLE

Plaintiffs argue that any differences in State law can be overcome through subclassing. But Plaintiffs' vague assurances are not enough. Plaintiffs are required to present a workable plan. They have not and can not. *See, e.g.*, *Utility Consumers,* , 259 F.R.D. at 487-88 and n.1 (rejecting on basis of judge's "forty years' experience as a trial judge"); Opp. at 24:2-17, ECF No. 109 (citing/quoting cases).

## IV. STATE-BY-STATE SALES

The Court's Order "also requests supplemental briefing on the number of class members in each state, if known or readily ascertainable." Order at 2. Defendants, unfortunately, do not possess such information. Defendant HAL did not retail the LCD RPTVs to individual purchasers. *See* Whalen Decl., ¶ 3, ECF No. 109-12. Rather, Defendant HAL sold the televisions to nationwide chains (*e.g.*, Sears; Rent-A-Center; Circuit City), regional chains (*e.g.*, Rex) and individual retailers throughout the country, who then further distributed the televisions or sold them directly to individual purchasers. Defendant HAL never received "pass-through" sales information – i.e., where the units were actually sold.

## V. CONCLUSION

Plaintiffs may not "take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" *Shutts* 472 U.S. at 821. But that is exactly what Plaintiffs are trying to do here.

Plaintiffs' Motion for Class Certification should be denied.

DATED: November 19, 2010

SETH E. PIERCE
ALFREDO ORTEGA
MITCHELL SILBERBERG & KNUPP LLP

By: /s Seth E. Pierce
Seth E. Pierce
Attorneys for Defendants

---

(…continued)
located in California and thus **the alleged fraudulent misrepresentations forming the basis of the claim of every Sprint subscriber nationwide** emanated from California.") (emphasis added).

**CERTIFICATE OF SERVICE (CM/ECF)**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I hereby certify that on November 19, 2010, I electronically filed the foregoing documents entitled **Defendants' Response to Court's Request for Supplemental Briefing** with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following email address(es):  jczeisler@milberg.com; jkoncius@lange-koncius.com; jlange@lange-koncius.com; rlax@lax-law.com; eric@hop-law.com; clayrobbinsiii@yahoo.com; debra.mcmullen@yahoo.com; psafirstein@milberg.com; wimsatt@earthlink.net; and info@mcmc-law.com

DATED:  November 19, 2010

SETH E. PIERCE
ALFREDO ORTEGA
MITCHELL SILBERBERG & KNUPP LLP


By: /s Seth E. Pierce
Attorneys for Defendants, Hitachi Home Electronics (America), Inc., Hitachi America, Ltd., and Hitachi, Ltd.
Email:  sep@msk.com