1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

IN RE HITACHI TELEVISION OPTICAL
BLOCK CASES

11

12

This Document Relates To: All Actions

13

14

15

CASE NO. 08cv1746 DMS (NLS)

**ORDER DENYING PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION**

**[Docket No. 100]**

16

17          This matter comes before the Court on Plaintiffs' motion for class certification.  Defendants

18   Hitachi Home Electronic (America), Inc. ("HHEA"), Hitachi America, Ltd. ("HAL") and Hitachi Ltd.

19   ("HL") filed an opposition to the motion, and Plaintiffs submitted a reply.  After reviewing the initial

20   briefs, the Court requested supplemental briefing from the parties on whether the application of

21   California law to the claims of the nationwide class members would satisfy the constitutional standard

22   set out in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).  The parties submitted supplemental

23   briefs on that issue.  Defendants also submitted a sur-reply, to which Plaintiffs filed a rebuttal.  The

24   motion came on for hearing on December 17, 2010.  Robert I. Lax appeared and argued on behalf of

25   Plaintiffs, and Seth E. Pierce appeared and argued on behalf of Defendants.  Having carefully considered

26   the pleadings and arguments of counsel, the Court now denies the motion.

27   / / /

28   / / /

# I.

## BACKGROUND

The named Plaintiffs in this consolidated case are Darrin Lingle, Matthew Wagner, George Yakoubian, Crystal Markee, Stan Gor, Jason Braswell and Karen Gilbert. Each of these Plaintiffs purchased an Hitachi LCD Rear Projection Television (the "product") from an independent retailer with an alleged "defect in a major component called the "Optical Block." (*Lingle v. Hitachi Home Electronics (America), Inc., et al.*, Case Number 08cv1746, First Am. Compl. ¶ 3.) Plaintiffs allege the defect "was present upon delivery[,]" and that it "manifests itself over time, render[ing] the Televisions unsuitable for their principal and intended purpose, in that it causes video and color anomalies to be displayed on the screens of the Televisions, severely interfering with the program display." (*Id.*) Plaintiffs Lingle, Wagner and Yakoubian notified Hitachi of the problems they were having with their products, and requested that Hitachi repair the products pursuant to its warranty. (*Id.* ¶¶ 4-6.) However, Hitachi stated the products were out of warranty, and refused to make any repairs. (*Id.*) Plaintiffs also allege Defendants Hitachi Home Electronics (America), Inc., Hitachi America, Ltd., and Hitachi Ltd. knew about the defect, but failed to disclose it to the general public. (*Id.* ¶ 12.)

On September 23, 2008, Plaintiffs Lingle, Wagner and Yakoubian filed a complaint in this Court on behalf of themselves and all others similarly situated alleging claims for (1) violation of California Business and Professions Code § 17200, (2) violation of California Business and Professions Code § 17500, (3) violation of California Civil Code § 1750, (4) violations of other states' unfair and deceptive acts and practices laws, (5) violation of California Civil Code § 1792 (the "Song Beverly Consumer Warranty Act"), (6) violation of 15 U.S.C. § 2301 (the "Magnuson-Moss Act"), (7) breach of express warranty and (8) breach of implied warranty. These Plaintiffs filed a First Amended Complaint on November 18, 2008, realleging the same claims for relief.

On December 12, 2008, Plaintiffs Markee and Gor filed a complaint in this Court on behalf of themselves and all others similarly situated alleging the same claims as Plaintiffs Lingle, Wagner and Yakoubian, with the exception of the breach of implied warranty claim. On August 24, 2010, Plaintiffs Braswell and Gilbert filed a complaint in this Court on behalf of themselves and all other similarly

/ / /

situated alleging the same claims as Plaintiffs Lingle, Wagner and Yakoubian.  All three cases have been consolidated before this Court.

## II.

## DISCUSSION

Plaintiffs move to certify a class "consisting of all persons who purchased, in the United States, a Hitachi LCD Rear Projection Television" of certain make and model.  (Mem. of P. & A. in Supp. of Mot. at 1.)  Plaintiffs also seek to certify a subclass "for all those pursuing claims under California's Song-Beverly Consumer Warranty Act consisting of all persons who purchased a Television in California[.]"  (*Id.*)  Plaintiffs assert the proposed classes satisfy the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3).  Defendants question whether Plaintiffs' counsel is adequate to represent the class, but their primary argument is that Plaintiffs have failed to satisfy the requirements of Rule 23(b)(3).

**A.     Legal Standard**

Federal Rule of Civil Procedure 23(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

A showing that these requirements are met, however, does not warrant class certification. Plaintiff must also show that one of the requirements of Rule 23(b) is met.  Here, Plaintiffs rely on Rule 23(b)(3), which requires the court to find:

that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The party seeking certification must provide facts sufficient to satisfy the requirements of Rule 23(a) and (b). *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308-09 (9th Cir. 1977). In turn, the district court must conduct a rigorous analysis to determine that the prerequisites of Rule 23 have been met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). If a court is not fully satisfied, certification should be refused. *Id.* It is a well-recognized precept that "'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* at 160 (citation omitted). However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citation omitted); *see also Nelson v. United States Steel Corp.*, 709 F.2d 675, 679-80 (11th Cir. 1983) (plaintiffs' burden "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation omitted). Rather, the court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. *See* Fed. R. Civ. P. 23 advisory committee notes.

**B.      The Proposed Nationwide Class**

The focus of the parties' briefs is Plaintiffs' proposed nationwide class of consumers that purchased one of Defendants' allegedly defective products. As explained below, this class satisfies the requirements of Rule 23(a). However, it does not satisfy the requirements of Rule 23(b)(3).

1.      Rule 23(a)

As set out above, Rule 23(a) sets out four requirements for class certification: (1) Numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. These elements are addressed below.

///

### a.   Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  The plaintiff need not state the exact number of potential class members; nor is a specific minimum number required.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Rather, whether joinder is impracticable depends on the facts and circumstances of each case.  *Id.*; *see Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1498 (10th Cir. 1992) (whether the class is so numerous is a fact-specific inquiry; district court is granted wide latitude in making this determination).

Here, Plaintiffs state that Defendants sold more than 100,000 of the allegedly defective products.  A class of this size satisfies the numerosity requirement.  Accordingly, Plaintiffs have satisfied the first requirement of Rule 23(a).

### b.   Commonality

The second element of Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This requirement "focuses on the relationship of common facts and legal issues among class members." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007).  This rule has been construed permissively.  Indeed, the  showing to satisfy commonality is "minimal." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

In this case, Plaintiffs provide a long list of "common questions" to support their argument that the commonality requirement is satisfied.  (*See* Mem. of P. & A. in Supp. of Mot. at 10.)  These questions raise legal and factual issues, and they are sufficient to meet the "minimal" standard of commonality.

### c.   Typicality

The next requirement of Rule 23(a) is typicality.  "Although the 'commonality and typicality requirements of Rule 23(a) tend to merge,' each factor serves a discrete purpose.  Commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." *Dukes*, 509 F.3d at

1184 n.12 (citations omitted).  The rule sets forth a permissive standard:  "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

Here, Plaintiffs' claims are typical of the class.  Each purchased a product from Defendants that allegedly suffered from the same defect.  Accordingly, Plaintiffs have satisfied the typicality requirement.

### d.     Adequacy of Representation

The final requirement of Rule 23(a) is adequacy.  Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)).  In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).  Both the named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

In this case, Plaintiffs have demonstrated the absence of any conflict between themselves and their counsel and the members of the class.  Plaintiffs have also demonstrated that they and their counsel will vigorously prosecute the case on behalf of the class.  Accordingly, Plaintiffs have satisfied Rule 23(a)(4).

### 2.     Rule 23(b)

1    The next issue is whether Plaintiffs have shown that at least one of the requirements of Rule

2  23(b) is met.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997).  In this case, Plaintiffs

3  assert they have met the requirements of Rule 23(b)(3).

4    Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be

5  served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022 (internal

6  quotations omitted).  Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to the class

7  "predominate" over issues unique to individual class members, and (2) is the proposed class action

8  "superior" to the other methods available for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

9  In adding these requirements to the qualifications for class certification, "the Advisory Committee

10  sought to cover cases 'in which a class action would achieve economies of time, effort, and expense,

11  and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural

12  fairness or bringing about other undesirable results.'"  *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ.

13  P. 23(b)(3)(advisory committee notes)).

14    A "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common

15  issues will help achieve judicial economy.'"  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935,

16  944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir.

17  2001)). Thus, courts must determine whether common issues constitute such a significant aspect of the

18  action that "there is a clear justification for handling the dispute on a representative rather than on an

19  individual basis."  7A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1778 (3d ed.

20  2005).  To satisfy the predominance inquiry, it is not enough to establish that common questions of law

21  or fact exist, as it is under Rule 23(a)(2)'s commonality requirement.  The predominance inquiry under

22  Rule 23(b) is more rigorous, *Amchem*, 521 U.S. at 624, as it "tests whether proposed classes are

23  sufficiently cohesive to warrant adjudication by representation."  *Id.* at 623.

24    Here, Plaintiffs argue that common issues of fact and law predominate over any individual

25  issues.  Specifically, Plaintiffs argue their claims are based on the same design defect and Defendants'

26  misrepresentation and concealment of that defect.  Plaintiffs also contend that California law should

27  apply to the claims of all class members, therefore the legal issues for each class member will be the

28

same.  Defendants dispute that common issues of fact predominate.  They also argue that application of California law to the nationwide class proposed here would violate due process.

In *Shutts*, the Supreme Court resolved the issue of whether application of a forum state's substantive law to the claims of a nationwide class violated due process.  472 U.S. 797.  The class in *Shutts* consisted of approximately 33,000 members that possessed royalty rights in land leased to the defendant for the production or purchase of natural gas.  *Id.* at 799, 801.  The land at issue was located in eleven different States, and the class members "reside[d] in all 50 States, the District of Columbia, and several foreign countries."  *Id.*  The plaintiffs alleged the defendant had withheld interest on certain royalty payments, and brought a class action in Kansas state court to recover those amounts.  *Id.*  Over defendant's objection, the state court certified the class, and the case proceeded to trial before the court. *Id.* at 801.  Applying Kansas law, the court found defendant liable for interest on the suspended royalties to all class members.  *Id.*  The defendant appealed the judgment to the Supreme Court of Kansas, arguing that "Kansas courts could not apply Kansas law to every claim in the dispute[,]" but the court rejected that argument.  *Id.* at 802-03.  It found "that generally the law of the forum controlled all claims unless 'compelling reasons' existed to apply a different law.  The court found no compelling reasons, and noted that '[t]he plaintiff class members have indicated their desire to have this action determined under the laws of Kansas.'"  *Id.* at 803.  The Supreme Court granted certiorari to decide whether application of Kansas substantive law to the claims of all class members "violated the constitutional limitations on choice of law mandated by the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of Article IV, § 1."  *Id.* at 816.

In resolving this issue, the Court first "determine[d] whether Kansas law conflicts in any material way with any other law which could apply."  *Id.*  After finding such conflicts, the Court then considered whether Kansas had "a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair."  *Id.* at 821-22 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 301, 312-13 (1981)).  The Court found such contacts did not exist, and therefore held "that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits."  *Id.* at 822.

1                 *a.*      *Is There A Material Conflict Between California Law and the Laws of the Other*

2                             *States?*

3           Following the analysis in *Shutts*, Defendants argue that California's consumer protection laws

4   conflict with the laws of other states in several material respects.  In support of this argument,

5   Defendants cite case law that supports their argument.  *See In re Grand Theft Auto Video Game*

6   *Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) (stating differences in state consumer fraud laws

7   encompass issues of reliance, scienter, burden of proof, availability of class actions and notice); *In re*

8   *Prempro*, 230 F.R.D. 555, 564 (E.D. Ark. 2005) ("Both consumer fraud and unfair competition laws of

9   the states differ with regard to the defendant's state of mind, type of prohibited conduct, proof of injury-

10   in-fact, available remedies, and reliance, just to name a few differences.") (footnote omitted).  Other

11   cases are also in accord.  *See In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (relying

12   on Seventh Circuit's conclusion that state consumer protection laws "vary considerably"); *In re*

13   *Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary

14   considerably, and courts must respect these differences rather than apply one state's law to sales in other

15   states with different rules."); *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 584-85 (N.D. Ill. 2008) (listing

16   examples of differences in state consumer protection laws).  These cases support a finding that there are

17   material conflicts between California's consumer protection laws and the consumer protection laws of

18   the other forty-nine states.

19           The case law also supports a finding that there are material conflicts between California's

20   warranty laws and the warranty laws of the other states.  *See In re Gen. Motors Corp. Dex-Cool*

21   *Products Liability Litig.*, 241 F.R.D. 305, 319-21 (S.D. Ill. 2007).  In *Dex-Cool*, the court's research

22   revealed that there were "at least three distinct approaches to the question of reliance as an element of

23   a claim for breach of express warranty." *Id.* at 319.  The majority approach holds that "reliance is not

24   an element of an express warranty claim." *Id.*  However, "a significant number of other states ... require

25   specific reliance on a seller's statements as a condition of recovery ...." *Id.* at 320.  Finally, "a small

26   minority of the states ... follow a third approach to reliance, holding that a seller's affirmations and

27   promises relating to goods create a rebuttal presumption of reliance by a buyer." *Id.*  The states also

28   take differing views on whether privity is required for warranty claims. *See Grand Theft Auto*, 251

1   F.R.D. at 161 (stating eighteen states require privity for breach of warranty claims while other states do

2   not); *In re Ford Motor Co. Ignition Switch Products Liability Litig.*, 174 F.R.D. 332, 346 (D.N.J. 1997)

3   (same).  Thus, there are material conflicts between California warranty law and the warranty law of the

4   other forty-nine states.

5                    *b.        Does California Have Sufficient Contacts to the Claims of Each Class Member?*

6            Having found material conflicts between the relevant California laws and the laws of the other

7   states, the Court must now consider whether California has sufficient contacts to each class member's

8   claims to ensure that the choice of California law "is not arbitrary or unfair."  *Shutts*, 472 U.S. at 821-22.

9            There is no dispute that Hitachi, Ltd. is a Japanese corporation with its principal place of

10   business in Japan.  Nor is there any dispute that Hitachi Home Electronics (America), Inc. is a California

11   corporation with its principal place of business in Chula Vista, California.  Plaintiffs assert that Hitachi

12   America, Ltd. has an office in California, but the evidence reflects that it is a New York corporation,

13   and Defendants assert its principal place of business is in New York.

14            The exact location of the design and development of the products at issue is unclear.  The best

15   description of the design and development process is found in the Declaration of Naoyuki Ogura, the

16   chief optical engineer for all Hitachi-brand LCD rear projection television designs from 1987 through

17   2009, who states: "The development of a product like the Hitachi-brand LCD RPTV is a team effort,

18   that draws upon multiple resources world-wide, including design engineers, factory personnel, and

19   component suppliers.  But the Hitachi-brand LCD RPTVs, and particularly the optical engines, were

20   primarily developed/designed in Japan."  (Decl. of Naoyuki Ogura in Supp. of Opp'n to Mot. ¶ 7.)

21            Plaintiffs make much of the fact that employees of Hitachi Home Electronics (America), Inc.

22   were involved in the manufacture of the products at issue.  However, the manufacturing process actually

23   occurred at a plant in Mexico.

24            There is no apparent dispute that Hitachi America, Ltd. sold and distributed the products to

25   independent retailers throughout the country (*e.g.*, Sears and Circuit City), but it is unclear whether that

26   distribution process had a central location, and if so, where that center was located.

27            Plaintiffs assert that Defendants' marketing efforts for the products at issue originated at Hitachi

28   Home Electronics (America), Inc.'s headquarters in Chula Vista.  William Whalen, an employee of

Hitachi America, Ltd., admits that he "was responsible for coordinating the marketing of the Hitachi-brand LCD Rear Projection Televisions ('LCD RPTVs') at issue in this case."  (Decl. of William Whalen in Supp. of Opp'n to Mot. ¶ 1.)  However, he states:

> HAL did not directly, actively market the Hitachi-brand LCD RPTVs for sale to potential individual purchasers.  HAL's primary strategy, at the time, was to encourage the retail dealers that purchased the televisions for re-sale to advertise and promote the products directly to their customers, thus avoiding the necessity of having HAL orchestrate and bear the costs of a comprehensive national marketing campaign to bring broad consumer attention to Hitachi-brand LCD RPTVs on behalf of such retail dealers.

(*Id.* ¶ 4.)

The consumers then purchased the products from the independent retailers.  "HAL did not retail Hitachi-brand LCD RPTVs directly to individual purchasers/consumers."  (*Id.* ¶ 3.)

The products came with an operating guide, which included a phone number for a service hotline.  (Decl. of Joseph J.M. Lange in Supp. of Supp. Br. ("Supp. Lange Decl."), Ex. 2.)   "Affina, a nationally recognized provider of third-party (or outplacement) customer service support, answers all calls to the" hotline.  (Decl. of Theresa Omar in Supp. of Opp'n to Mot. ("Omar Decl.") ¶ 3.)  "Affina customer service operators and supervisors field all of these calls from a call center located in Illinois."  (*Id.*)  The operating guide explained that if the consumer required service, they should call the hotline and an operator would direct them to the nearest Hitachi Authorized Service Facility ("ASF").  (Supp. Lange Decl., Ex. 2.)  The guide also states: "Should you have any questions regarding warranty, service, operation, or technical assistance, please contact: Hitachi America, LTD. Home Electronics Division 900 Hitachi Way Chula Vista, CA 91914-3556."  (*Id.*)  If the consumer wished to register their product, they were directed to do so on-line or to send their warranty card to Hitachi America Ltd., Home Electronics Division Attn: Warranty Department 900 Hitachi Way Chula Vista, CA 91914-9943.  (Supp. Lange Decl., Ex. 4.)

In the event the customer had an issue or problem with the product, they had the option of contacting the retailer, calling the hotline, or contacting a local service provider of their own choosing.  (Omar Decl. ¶ 2.)  If the customer contacted the hotline, the operator would attempt to resolve the problem over the phone.  (*Id.*)  If the operator "does not know the answer to the question posed, the question is escalated to a technical support representative at HHEA or HAL (depending on the

timeframe) located in the San Diego area for further handling."  (*Id.* ¶ 4.)  Teresa Omar, the former Manager of Customer Service at Hitachi Home Electronics (America), Inc., explains:

> Affina strives to answer all technical questions posed.  While the rate of technical questions that they cannot handle directly varies from day to day, week to week, and month to month, overall far less than 1% of all service inquiries to [the hotline] are escalated to corporate personnel in Chula Vista, California.

(*Id.* ¶ 5.)  If the operator is unable to resolve the issue over the phone, he or she would refer the customer to "an independent, local, authorized servicer[ ] (i.e., Authorized Service Facilities or ASF) for further assistance."  (*Id.*)

If the product was under warranty, the ASF "performs the service and then bills HAL or HHEA, as appropriate, for the cost of labor and replacement parts and, in cases requiring the servicer to drive more than 25 miles to complete the service, mileage reimbursement."  (*Id.* ¶ 6.)  If the product was out of warranty, the operators "have discretion, based on the specific facts of the inquiry, to make concessions to the customer, up to and including free, in-home repair."  (*Id.* ¶ 7.)  If Affina representatives were unable to resolve the issue to the customer's satisfaction, they would then forward the inquiry to Ms. Omar in California.  (*Id.*)

Overall, this process has some contacts with the State of California.  Defendants Hitachi Home Electronics (America), Inc. and Hitachi America, Ltd. both have a corporate presence in the State. However, the corporate presence of these Defendants does not amount to a contact with the claims of the individual class members.  Unlike the contacts analysis for purposes of personal jurisdiction, which measures the defendant's contacts with the forum state, the contacts analysis here measures the forum state's contacts with the individual claims.  Thus, Defendants' corporate presence in the State of California does not constitute a significant contact for purposes of the due process analysis.

That these Defendants have employees in the State of California is also insufficient to satisfy due process.  Although Hitachi employees may have lived in California and worked in the Chula Vista office, the actual manufacturing of the product occurred at the Mexican assembly plant.  Furthermore, Mr. Whalen's location in the Chula Vista office is of little significance in this analysis as Hitachi did not market its products directly to consumers.  Rather, Hitachi left the marketing to the individual retailers.  Thus, any representations about the quality of the products would have originated with the individual retailers, not Hitachi employees in California.

Plaintiffs' strongest argument rests on the contacts between the State of California and the class members' warranty claims. Here, the consumers would have submitted their warranty registration cards to the Chula Vista office, and there is evidence that Hitachi "used to maintain" a staff of employees in the Chula Vista office to handle technical inquiries from Affina operators. (*Id.* ¶ 4.) However, the evidence reflects that those employees were only involved in 1% of all warranty inquiries. (*Id.* ¶ 9.) The other 99% of warranty inquiries were handled either by Affina operators in Illinois or an ASF in the consumer's local area. For these claims, there would have been no contact with the State of California other than submission of the warranty registration card to the Chula Vista office. The Court finds this contact, and the other limited contacts discussed above, do not amount to "significant contacts" sufficient to allow application of California law to the claims of the nationwide class.

In making this finding, the Court recognizes that other courts have applied California law to claims of nationwide classes. *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010); *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008); *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580 (C.D. Cal. 2008); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987). In each of those cases, however, the claims had more significant contacts with the State of California. For instance, in *Chavez*, the alleged misrepresentations, which were on the actual products, originated in the State of California. 268 F.R.D. at 379. Similarly, in *Mazza*, the defendants' design and marketing of its products occurred in California. 254 F.R.D. at 620.[1] And, in *Keilholtz*, a majority of the products were at least partially manufactured in California. 268 F.R.D. at 340.

Here, Plaintiffs allege the misrepresentations occurred in California, but they fail to submit any evidence to support this allegation. Rather, the evidence reflects that Defendants did not market their products directly to consumers, but left that task to the individual retailers. Plaintiffs also allege that the products were designed in California, but again the evidence reflects that the products were primarily developed and designed in Japan. Finally, the products at issue here were manufactured

---

[1] The *Mazza* court also noted "that the advertising agency hired by Honda to create the print, radio, and television advertising for the Acura RL and the CMBS System is based in Santa Monica, California, and that the agency retained for internet-based advertising is based in Culver City, California." *Id.*

08cv1746

1   entirely in Mexico, not California.  In light of these facts, California does not have "a 'significant

2   contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff

3   class, contacts 'creating state interests,'" to ensure that application of California law to all claims is "not

4   arbitrary or

5   / / /

6   unfair." *Shutts*, 472 U.S. at 821-22 (quoting *Allstate*, 449 U.S. at 312-13).  Accordingly, the Court

7   declines to apply California law to the nationwide class.

8          Absent application of California law, Plaintiffs urge the Court to create subclasses based on

9   states with identical or similar legal standards.  As with the proposed nationwide class, Plaintiffs "bear

10  the burden of establishing appropriate subclasses and demonstrating that each subclass meets the Rule

11  23 requirements."  *In re Telectronics Pacing Systems, Inc.*, 168 F.R.D. 203, 221 (S.D. Ohio 1996)

12  (citations omitted).  Plaintiffs' attempts here do not meet that burden.  Specifically, Plaintiffs fail to

13  identify which states have identical or similar legal standards, and how many subclasses would be

14  required for the consumer protection act claims and the warranty claims.  They also fail to identify the

15  representatives for each subclass, how many members would be included in each subclass, and how each

16  of the other requirements for certification would be met by each subclass.  This "cavalier" approach to

17  class certification is insufficient.  *See In re Paxil Litig.*, 212 F.R.D. 539, 545-48 (C.D. Cal. 2003)

18  (denying motion for class certification where plaintiffs failed to provide manageable class definition and

19  manageable trial plan).  Plaintiffs cannot postpone their burden to meet the class certification

20  requirements "and expect this Court to certify an amorphous, undefined class." *Telectronics*, 168 F.R.D.

21  at 221.  Rather, Plaintiffs "must come forward with the exact definition of each subclass, its

22  representatives, and the reasons each subclass meets the prerequisites of Rule 23(a) and (b)." *Id.*  Unless

23  and until Plaintiffs do so, the Court declines to certify any subclasses in this case.[2]

24                                      **IV.**

25                                 **CONCLUSION**

26         Plaintiffs move to certify "a class consisting of all persons who purchased, in the United States,

27  a Hitachi LCD Rear Projection Television ...." (Mem. of P. & A. in Supp. of Mot. at 1.)  Plaintiffs also

28

_____

[2] This includes Plaintiffs' request to certify a subclass for the Song Beverly claim.

1  move to certify "a subclass for all those pursuing claims under California's Song-Beverly Consumer

2  Warranty Act consisting of all persons who purchased a Television in California[.]"  (*Id.*)  For the

3  reasons set out above, the Court finds Plaintiffs have failed to satisfy the predominance requirement for

4  their proposed nationwide class.  Plaintiffs have also failed to establish any of the requirements for

5  certification of subclasses as an alternative to the nationwide class, or a subclass based on the Song

6  Beverly claim.  Accordingly, Plaintiffs' motion for class certification is denied in its entirety.

7       Counsel shall contact the Magistrate Judge's chambers to schedule a follow-up case management

8  conference within thirty days, at which time all remaining dates, including a trial date, shall be set.

9       **IT IS SO ORDERED.**

10  DATED:  January 3, 2011

11

12                                    HON. DANA M. SABRAW
                                     United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28