UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN RE HITACHI TELEVISION OPTICAL BLOCK CASES | CASE NO. 08cv1746 DMS (NLS) |
|---|---|
| This Document Relates To: All Actions | **ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>[Docket No. 158] |

This matter comes before the Court on Plaintiffs' renewed motion for class certification. Defendants Hitachi Home Electronic (America), Inc. ("HHEA"), Hitachi America, Ltd. ("HAL") and Hitachi Ltd. ("HL") filed an opposition to the motion, and Plaintiffs submitted a reply. Having carefully considered the pleadings and arguments of counsel, the Court now denies the motion.

**I.**

**BACKGROUND**

The named Plaintiffs in this consolidated case are Darrin Lingle, Matthew Wagner, George Yakoubian, Crystal Markee, Stan Gor, Jason Braswell, Karen Gilbert and Elliot Musial. Each of these Plaintiffs purchased an Hitachi LCD Rear Projection Television (the "product") from an independent retailer with an alleged "defect in a major component called the "Optical Block." (*Lingle v. Hitachi Home Electronics (America), Inc., et al.*, Case Number 08cv1746, First Am. Compl. ¶ 3.) Plaintiffs allege the defect "was present upon delivery[,]" and that it "manifests itself over time, render[ing] the

1  Televisions unsuitable for their principal and intended purpose, in that it causes video and color
2  anomalies to be displayed on the screens of the Televisions, severely interfering with the program
3  display." (*Id.*)  Plaintiffs Lingle, Wagner and Yakoubian notified Hitachi of the problems they were
4  having with their products, and requested that Hitachi repair the products pursuant to its warranty. (*Id.*
5  ¶¶ 4-6.)  However, Hitachi stated the products were out of warranty, and refused to make any repairs.
6  (*Id.*)   Plaintiffs also allege Defendants Hitachi Home Electronics (America), Inc., Hitachi America,
7  Ltd., and Hitachi Ltd. knew about the defect, but failed to disclose it to the general public.  (*Id.* ¶ 12.)

9  On September 23, 2008, Plaintiffs Lingle, Wagner and Yakoubian filed a complaint in this Court
10 on behalf of themselves and all others similarly situated alleging claims for (1) violation of California
11 Business and Professions Code § 17200, (2) violation of California Business and Professions Code §
12 17500, (3) violation of California Civil Code § 1750, (4) violations of other states' unfair and deceptive
13 acts and practices laws, (5) violation of California Civil Code § 1792 (the "Song Beverly Consumer
14 Warranty Act"), (6) violation of 15 U.S.C. § 2301 (the "Magnuson-Moss Act"), (7) breach of express
15 warranty and (8) breach of implied warranty.  These Plaintiffs filed a First Amended Complaint on
16 November 18, 2008, realleging the same claims for relief.

17 On December 12, 2008, Plaintiffs Markee and Gor filed a complaint in this Court on behalf of
18 themselves and all others similarly situated alleging the same claims as Plaintiffs Lingle, Wagner and
19 Yakoubian, with the exception of the breach of implied warranty claim.  On August 24, 2010, Plaintiffs
20 Braswell and Gilbert filed a complaint in this Court on behalf of themselves and all other similarly
21 situated alleging the same claims as Plaintiffs Lingle, Wagner and Yakoubian.  Plaintiff Musial filed
22 a complaint in Illinois state court alleging claims for (1) violation of the Illinois Consumer Fraud Act,
23 (2) violation of the Magnuson-Moss Act, (3) breach of express warranty, (4) breach of implied warranty
24 and (5) breach of contract.  That case was removed to Illinois federal court, and subsequently transferred
25 to and consolidated with the other three cases before this Court.

26 On August 27, 2010, Plaintiffs moved for certification of a nationwide class of persons who
27 purchased certain make and model Hitachi products.  The Court denied that motion on the ground
28 Plaintiffs failed to satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3).

/ / /

Specifically, the Court found it would be unconstitutional to apply California law to the claims of a nationwide class, and therefore, common issues of law did not predominate.

## II.

## DISCUSSION

Plaintiffs now move for certification of a California-only class, *i.e.*, a class consisting only of persons who purchased a television in California. Plaintiffs Crystal Markee and Stan Gor are the proposed representatives of this class. Although limiting the class to California consumers resolves the choice of law issues, it does not resolve the factual issues in this case, on which individual issues predominate.

**A.    Legal Standard**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc.* v. *Dukes,* ___U.S.___, 131 S.Ct. 2541, 2550 (2011) (citing *Califano* v. *Yamasaki,* 442 U.S. 682, 700-01 (1979)). To qualify for the exception to individual litigation, the party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rules of Civil Procedure 23(a) and (b). *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1308-09 (9th Cir. 1977).

Federal Rule of Civil Procedure 23(a) sets out four requirements for class certification – numerosity, commonality, typicality, and adequacy of representation.[1] A showing that these requirements are met, however, does not warrant class certification. Plaintiffs also must show that one of the requirements of Rule 23(b) is met.

Here, Plaintiffs rely on Rule 23(b)(3), which requires the court to find:

> that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

---

[1] Fed. R. Civ. P. 23(a) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The district court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982). It is a well-recognized precept that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 (1978) (quoting *Mercantile Nat'l Bank v. Langdeau,* 371 U.S. 555, 558 (1963)). However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits at the class certification stage." *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir. 1983) (citation omitted); *see also Nelson v. United States Steel Corp.,* 709 F.2d 675, 679-80 (11th Cir. 1983) (plaintiff's burden "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation omitted). Rather, the court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. *See* Fed. R. Civ. P. 23 advisory committee notes. If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, certification should be refused. *Falcon,* 457 U.S. at 161.

**B.    Rule 23(b)**[2]

In this case, Plaintiffs assert they have met the requirements of Rule 23(b)(3). Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling

---

[2] In the order on Plaintiffs' motion for certification of a nationwide class, the Court found Plaintiffs had satisfied the requirements of Rule 23(a). Plaintiffs assert that finding should apply equally to the California class. Based on the Court's previous findings and the evidence presented since then, the Court agrees that the requirements of Rule 23(a) are met for the California class. Accordingly, the Court, like the parties, will focus on whether Plaintiffs have met the requirements of Rule 23(b).

1  their differences in a single action." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998)
2  (internal quotations omitted).  Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to
3  the class "predominate" over issues unique to individual class members, and (2) is the proposed class
4  action "superior" to the other methods available for adjudicating the controversy.  Fed. R. Civ. P.
5  23(b)(3).  In adding the requirements of predominance and superiority to the qualifications for class
6  certification, "the Advisory Committee sought to cover cases 'in which a class action would achieve
7  economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly
8  situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*
9  *Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) advisory
10 committee notes).

11      A "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common
12 issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935,
13 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir. 2001)).
14 Thus, courts must determine whether common issues constitute such a significant aspect of the action
15 that "there is a clear justification for handling the dispute on a representative rather than on an individual
16 basis." 7A Charles Alan Wright, *et al., Federal Practice and Procedure* § 1778 (3d ed. 2005).  To
17 satisfy the predominance inquiry, it is not enough simply to establish that a common question of law or
18 fact exists, as it is under Rule 23(a)(2)'s commonality requirement.  The predominance inquiry under
19 Rule 23(b) is more rigorous, *Amchem,* 521 U.S. at 624, as it "tests whether proposed classes are
20 sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.

21      1.   The Alleged Defect

22      Underlying each of the claims asserted in this case is Plaintiffs' allegation that Defendants'
23 products suffer from a design defect.  This is the focal point of the parties' briefs on class certification,
24 with Plaintiffs arguing that this issue is susceptible to common proof and Defendants arguing that
25 individual issues predominate.  Because this is a threshold issue relevant to each claim, the Court
26 addresses it first.

27      In their motion for certification of a nationwide class, Plaintiffs identified forty-three different
28 model televisions alleged to have the same design defect. (Mem. of P. & A. in Supp. of Mot. at 5-6.)

/ / /

These models all used one of seven different Optical Blocks. (*Id.*) Plaintiffs' expert, Eric Amador, states that although there are minor differences in the Optical Blocks,

> there is no material difference amongst them in the common design scheme which all utilize a high output wide spectrum incandescent light source, but fail to mitigate the excess heat or wide spectrum light generated by it, and contain further similarities in their use of identical or materially identical key components - most prominently their common LCD panels, polarizers, and filters - which are all of an insufficient specification and robustness to avoid damage from that excess heat and light.

(Expert Opinion of Eric Amador, Aug. 27, 2010, at 17.) Mr. Amador then goes on to list the components in the Optical Blocks, including "the LCD Panels, the LCD Drivers, the Optical Prism subassembly, polarizers, air cooling provisions, and other related components of the electro-optical imaging subsystem[,]" all of which are "of insufficient robustness to withstand the heat generated inside the optical blocks of the televisions when those televisions are used normally." (*Id.* at 19.) Mr. Amador explains that in addition to these common components, each of the units "shared a common design scheme which has resulted in the defect discussed above." (*Id.*) Specifically, each unit employed "air cooling," *i.e.*, mechanical fans and air filters, to remove excess heat and prevent harm to the optical block components. (*Id.* at 19-20.) Each unit also included an LCD panel that was "incapable of operating at the ambient temperature specified by Hitachi in the Operating Guides it provided its customers ...." (*Id.* at 20.)

Defendants do not dispute this general description of the product design and configuration. Instead, they point out there are numerous and significant distinctions in specific parts of the product. First, Defendants state there are differences in the lamp wattage, with some lamps being 100 watts and others being 120 watts. (Opp'n to Mot. at 9.) Second, Defendants state there are differences in lamp manufacturer. (*Id.* at 10.) Defendants assert the difference in lamp wattage is significant because a higher watt lamp generates more light and heat than a lower watt lamp, (*id.* at 9), and the difference in manufacturer is important because different manufacturers generate different levels of heat and light at the same wattage. (*Id.* at 10.) Third, Defendants state the different Optical Blocks use different numbers of polarizers. (*Id.* at 11.) Defendants argue the number of polarizers is important because more polarizers reduce the heat and light impact on the LCD panel. (*Id.*) Fourth, Defendants state

there are differences in the polarizer base material, which can impact the temperature in the Optical Block. (*Id.* at 11-12.) Fifth, Defendants state there are differences in the surface area of the polarizers and LCD panels, which is important "because smaller panels get hotter than larger panels when subjected to the same amount of energy[.]" (*Id.* at 12.) Sixth, Defendants state there are differences in the number of fans, the size of the fans, the size of the air openings in the fans and the fan RPM. (*Id.* at 12-13.) Defendants assert this is significant because more fans, bigger fans and faster fans produce more cooling. (*Id.* at 13.) Seventh, Defendants state there are differences in the air source, with some Optical Blocks pulling air from a lower cabinet and others pulling air from an upper cabinet. (*Id.*) Defendants argue this is significant because the air from the lower cabinet is hotter and dirtier than the air from the upper cabinet. (*Id.* at 13-14.) Eighth, Defendants state there are differences in the cooling duct configurations, which has "a dramatic effect on the LCD RPTV's ability to cool internal components." (*Id.* at 14.) Ninth, Defendants state there are differences in the design density, "i.e., how many components were installed, how closely together[,]" which "affects cooling." (*Id.*) In addition to these differences in product parts, Defendants state there were also differences in the product design during manufacture, *i.e.*, running changes among specific models. (*Id.* at 15.)

Plaintiffs do not appear to dispute that these differences exist. Instead, they argue the differences are immaterial. However, this argument misses the mark on a motion for class certification, which requires the Court to determine whether the claims can be adjudicated on a representative basis. If there are differences in the product design, or differences in the product parts that make up the design, both of which exist here, that standard is not met. *See Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 167 (S.D.N.Y. 2003) (finding issues of design defect not common to class due to number of products involved); *Kaczmarek v. Int'l Business Machines Corp.*, 186 F.R.D. 307, 312-13 (S.D.N.Y. 1999) (finding no predominance in light of differences in product models).

As stated by the California Supreme Court, "the issue of defective design is to be determined with respect to the product as a whole ...." *Daly v. General Motors Corp.*, 20 Cal. 3d 725, 746 (1978). Here, the product at issue here is an LCD Rear Projection Television, and more specifically, the Optical Block. There is no dispute that the Optical Block is made up of numerous component parts. It is not a single piece of equipment, nor was its design uniform across the different models at issue in this case.

Under these circumstances, common issues do not predominate over individual issues on the issue of a design defect. Because all of Plaintiffs' claims depend on the existence of a design defect, the Court denies Plaintiffs' motion for class certification.

### 2. Breach of Warranty

In addition to the failure to show predominance on the alleged design defect, Plaintiffs have failed to demonstrate predominance with respect to other issues on their breach of warranty claims. "To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 3795013, at *2 (N.D. Cal. Aug. 26, 2011) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)). Here, Plaintiffs assert that each member of the class received the same express written warranty, (Renewed Mot. for Class Cert. at 15), but they fail to provide any evidence to support that assertion. Rather, the evidence submitted reflects that some products "were sold without an express warranty." (Decl. of William Warren in Supp. of Opp'n to Mot. ¶¶ 5.a, 5.d.) The warranties that were issued also varied in length and start-date. (*See id.* ¶¶ 5.b-5.c, 6.) These facts also preclude a finding of predominance on Plaintiffs' breach of warranty claims.[3]

### III.
### CONCLUSION

For the reasons set out above, the Court finds Plaintiffs have failed to satisfy the predominance requirement for their proposed California class. Accordingly, Plaintiffs' renewed motion for class certification is denied.

**IT IS SO ORDERED.**

DATED: September 27, 2011

HON. DANA M. SABRAW
United States District Judge

---

[3] Plaintiffs' Song-Beverly Consumer Warranty Act and Magnuson-Moss Act claims depend on a showing of a breach of warranty. *Baltazar*, 2011 WL 3795013, at *4 (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009)). For the reasons set out above, the Court denies Plaintiffs' motion for class certification on those claims, as well.